UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDSAY OLSON,<br><br>*Plaintiffs*,<br>v.<br><br>MCBRIDE LAW FIRM, PLLC, and JOSEPH D. MCBRIDE,<br><br>*Defendants*. | Case No.<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lindsay Olson files her Complaint against Defendants McBride Law Firm, PLLC and Joseph D. McBride, and alleges upon personal knowledge as to her conduct, and on information and belief based on the investigation of her counsel, as to all other alleged conduct herein, as follows:

### I.  INTRODUCTION

1. This is a case about a lawyer and his law firm that pirated a copy of a copyrighted expert report and used that report in a criminal case for the very purpose the report was originally created.

2. Plaintiff Lindsay Olson ("Plaintiff" or "Olson") authored a written expert report titled "Multi-District Comparative Community Attitude Study" (the "Community Attitude Report" or the "Report"), analyzing potential bias in the jury pool of the District of Columbia against criminal defendants charged for crimes related to high-profile events at the United States Capitol on January 6, 2021 ("J6 Defendants").

3. Plaintiff's complaint arises out of copyright infringement claims based on the unauthorized copying, public distribution, and public display of the Report in a filing in federal court by Defendants without a license to use the Report and without a valid defense.

1

4.      Defendants exploited the Report in support of a motion to transfer venue for their J6 Defendant, using the Report *for the very purpose it was created*: in criminal litigation as support and a basis for a motion to transfer venue.

5.      Plaintiff Olson is the sole copyright owner and author of the Report.

6.      Defendants McBride Law Firm, PLLC and Joseph D. McBride, (collectively the "Defendants" or "McBride Defendants") represented Richard "Bigo" Barnett, a criminal defendant who was tried and convicted of various felonies he committed on January 6, 2021. Barnett is most notoriously known for invading Speaker of the House Nancy Pelosi's office and placing his feet on her desk after breaking into the US Capitol.

7.      Plaintiff Olson is the sole copyright owner of the April 2022 Report.

## II. PARTIES

8.      Plaintiff Lindsay Olson ("Olson") is a citizen of Texas.  She operates through In Lux Research and Analytics, a sole proprietorship.

9.      Defendant McBride Law Firm, PLLC, is a New York entity with its principal place of business at 305 Broadway, Suite 700, New York, New York 10007 and can be found in the District.

10.     Defendant Joseph D. McBride is, on information and belief, a citizen of New York and owns and operates his law firm, Defendant McBride Law Firm, PLLC, located at 305 Broadway, Suite 700, New York, New York 10007 in the District.

11.     Unless specifically alleged, whenever it is alleged that Defendants committed any act or omission, it is meant that the Defendants acted jointly through their owners, partners, associates, officers, directors, agents, servants, executives, lawyers, management, employees,

subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' owners, partners, associates, officers, directors, agents, servants, executives, lawyers, management, employees, subsidiaries, or affiliates.

### III. JURISDICTION AND VENUE

12. This action arises under the federal question, the U.S. Copyright Act, 17 U.S.C. §§ 101, *et. seq.*

13. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) and because a federal question is involved regarding infringement of copyright.

14. Under 28 U.S.C. Section 1400, civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendants or its agent resides or may be found or where defendants committed acts of infringement and have a regular and established place of business.

15. This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants harmed Plaintiff in this District and/or because Defendants are found in this District.

16. This Court has *in personam* jurisdiction over Defendants because Defendants availed themselves of the privileges of conducting business in this District and Defendants incurred a benefit from Plaintiff here, thus it is reasonable for Defendants to submit to the jurisdiction of this federal district court.

///

## IV. FACTUAL ALLEGATIONS

17. In 2022, Plaintiff authored the Report based on a request by two lawyers, David Fischer and Julie Haller ("Requesting Attorneys"), who represented two J6 Defendants in what became known as the Oath Keepers trial.

18. Plaintiff authored the Report and finalized the Report on or about April 15, 2022.

19. Plaintiff Olson has legal standing to enforce copyright infringement claims for the Report as the sole author of the Report.

20. In exchange for a $30,000 fee, Plaintiff licensed a copy of the Report to the Requesting Attorneys, authorizing them to use it in support of their motions to transfer venue based on alleged prejudicial jury bias in the District of Columbia's jury pool.

21. The Report was original and sufficiently based on Plaintiff's work product, creativity, originality, and as the sole author, justifying the Report as copyrightable.

22. The Report was an independent creation by Plaintiff as the author.

23. The Report contains a degree of creativity based on the amount of selection, coordination, and arrangement of the text of the Report and Plaintiff's expression of how the facts as gathered are described, organized, illustrated, and/or arranged based on interpretation of data from polling and analyzing that data into a digestible, easy to comprehend qualitative narrative about the findings of that data written in the Report for use in litigation.

24. The Report reflected some "creative spark" or "modicum of intellectual labor" based on Plaintiff's choices about wording and presentation of how the data from the polling applied to that snapshot in time during the spring of 2022 when the J6 cases were starting to proceed towards trial and jury selection.

25.     After Plaintiff delivered a copy of the Report to the Requesting Attorneys, they took the Report and uploaded it to the Court's public docket in 1:22-cr-00015-APM (Dkt. 654-1) and in 1:21-cr-00028-APM (Dkt. 93-1) (otherwise known as the Oath Keepers case consolidated for trial and jury selection), causing a public display of the Report in support of a motion to transfer venue, as authorized by Plaintiff in exchange for the required $30,000 payment.

26.     Plaintiff neither assigned the copyright in the Report to the Requesting Attorneys nor granted any sublicensing rights.

27.     The Requesting Attorneys' authorized copying and public display of the Report on the public federal court PACER did not relinquish or waive Plaintiff's exclusive copyright in the Report, such that any J6 criminal defense lawyer could simply copy the Report off of PACER and publicly display the Report for a motion to transfer venue, *for the very same purpose* the Report was authored and offered in the market.

28.     The Report was available for licensing to any J6 Defendant or lawyers for the fair and established market value of $30,000.

29.     The fact that Defendants made an authorized copy of the Report from the Internet (PACER) and downloaded a copy which was available through PACER, does not mean that the Report was in the public domain or unconditionally free to use for the very same purpose it was created and offered in the market.

30.     Sometime in or around September 2022, Defendants copied and published a copy of Plaintiff Olson's April 2022 Report in its entirety and on September 23, 2022, uploaded a copy of the Report on the public PACER in *USA v. Richard Barnett*, 1:21-cr-00038 (Dkt. 81), causing an unauthorized public display.  See Exhibit A (Defendants' motion and the Report).

31. Defendants' exploitation of the Report was a complete unauthorized substitute for an authorized copy that could and should have easily been obtained by paying Plaintiff a licensing fee.

32. Notably, other defense lawyers representing J6 defendants who filed motions to transfer venue only referenced that the Report existed but did not copy and upload for public display the Report in its entirety and instead summarized the lawyer's conclusion of the Report. *See e.g., USA v. Barry Bennet Ramey* 1:22-cr-00184-DLF, Dkt. 30 at 6.

33. In other words, lawyers for J6 defendants could have made reference to the Report and attempted to describe its findings on their own, without violating Plaintiff's copyright by uploading a copy of the Report for public display in its entirety and for the same purpose the Report was created.

34. Instead, Defendants exploited the Report as part of each of their representation of J6 Defendant clients, who were enriched by its use when they uploaded and displayed a full copy of the Report for public display without Plaintiff's authorization or paying Plaintiff an agreed licensing fee.

35. Defendants' exploitation of the Report subverted the market for Plaintiff Olson's Report.

36. Plaintiff Olson's Report had a target market for use by lawyers representing J6 Defendants facing jury trials sourcing jurors from the District of Columbia close enough in time to the dates the underlying study covered to support motions to change venue or transfer for trial.

37. The reasonable market for Plaintiff Olson's Report was limited to a finite number of buyers over a limited time period.

38. Defendants were part of that target market of likely buyers.

39. Defendants' unauthorized use of the Report reduced the limited market for the Report by at least one license.

40. A license of Plaintiff Olson's Report is worth $30,000 based on prior licensing history.

41. Defendants impaired the market for Plaintiff Olson's Report by distributing it to the public, acting as if it had authorization from Plaintiff when they did not.

42. Authorization to use Plaintiff's Report was available to Defendants in exchange for an agreed payment of a licensing fee to use the Report.

43. Plaintiff incurred expenses and expended considerable time and effort to perform the underlying study and author the Report, which was an original and in-depth critical analysis of community attitudes of potential jurors, including visualizations and written commentary, justifying and supporting copyrightability.

44. Plaintiff spent considerable time and effort to author the Report.

45. Plaintiff offers to create original written expert reports for use in litigation as part of her business and must be paid fair market value for use of her written expert reports in court.

46. The Report was specially and specifically created and authored for use in criminal litigation for J6 Defendants venued in the District of Columbia.

47. The report had significant commercial value.

48. Defendants used the Report as part of their professional representation in the Barnett case identified above and were enriched by its use.

49. Defendants never sought Plaintiff's authorization to use the Report for use in the litigation.

50. Defendants subverted the market for Plaintiff Olson's Report.

51.     Defendants impaired the market for Plaintiff Olson's Report by copying and distributing it to the public and to others who could make use of it without authorization or payment to Plaintiff.

52.     Plaintiff was unaware of the Defendants' unauthorized use until she recently (within the last 60 days) discovered a copy of her Report with a file stamp of multiple illegible case numbers apparently stamped on top other case numbers as the screenshot below shows and as is attached as Exhibit A to this complaint.

Case 21:21-cv-00032-APM   Document 85-21   Filed 04/23/22   Page 12 of 23

53.     Upon noticing this evidence of multiple case numbers stamped over a copy of her Report, Plaintiff investigated further by combing through numerous J6 cases, securing access to a registered PACER account, and paying to run docket reports and download documents from the tens of thousands of documents across hundreds of J6 Defendants' cases, looking for her name or key words from her Report.

54.     Notably, Defendants do not mention Plaintiff in their docket entry on PACER or in the motion itself and did file a copy of the Report that was OCR'ed (text searchable), making it difficult to discover the infringement.  Nevertheless, Plaintiff did not know or could reasonable know about Defendants' infringement, which tolls any statute of limitations defense under what is known as the "discovery rule."

55.     PACER does not provide a full-text search function. Many of the unauthorized uses of the Report were made without making reference to Lindsay Olson or In Lux Research visible in the docket entry or the motion, rendering discovery of unauthorized uses a challenge, cost prohibitive and well beyond what is considered reasonable due diligence under the discovery rule.

56. Within the last 60 days, Plaintiff, through a costly and time-consuming diligence effort, discovered that her Report had been exploited by Defendants who had copied the Report without Plaintiff's permission and who had uploaded a copy for public display and for the same purpose the Report was created.

57. During representation of J6 felon, Barnett, Defendants made a copy of Plaintiff's copyrighted Report and published and distributed it on the public docket without authorization and for its intrinsic purpose that Plaintiffs created the Report. Because Defendants copied and distributed Plaintiff Olson's copyrighted Report without authorization, they infringed Plaintiff Olson's copyright and are liable for actual damages.

58. Defendants named herein continue to exploit Plaintiff's copyrighted work for a commercial purpose, without payment and without authorization.

59. On or about October 9, 2025, Plaintiffs sent the McBride Defendants and other lawyers in the *Barnett* case a cease-and-desist letter and notice that they had not paid for Plaintiff's Report and that a $30,000 payment was required to avoid legal action.

60. Defendants wrote back the same day, protesting that the claim was "frivolous, ill-conceived, and legally unsustainable," and proceeded to cite cases that do not exist for any colorable defense, a letter likely ginned up using Chat-GPT.

61. Plaintiff anticipates that Defendants will argue the unauthorized use of the Report in support of motions to transfer venue qualifies for judicial notice, but the facts do not support such here. Federal Rule of Evidence 201 "defines a fact appropriate for judicial notice as "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

9

sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). *Cnty. of San Miguel v. Kempthorne,* 587 F. Supp. 2d 64, 78 (D.D.C. 2008).

62. Here, Defendants could have simply referenced that Plaintiff authored the Report and summarized the findings. Instead, Defendants published the April 2022 Report to support facts (and law) that were clearly in dispute regarding whether the DC jury pool could be a fair venue for their J6 defendant, Mr. Barnett.

63. Plaintiff also anticipates that Defendants will assert the affirmative defense that their exploitation of the Report is somehow protected by the fair use doctrine.

64. Publishing a copyrighted Report to the public docket in its entirety for the very same purpose the Report was created indisputably constitutes infringing activity because it robs Plaintiff of the full economic benefits of her copyright and fair market value licensing fee of $30,000.

65. By analogy, if a group of lawyers hire a photographer to document a construction site in support of an expert report or to offer as a vivid demonstrative exhibit for use at trial to support a case in litigation, but fail to pay the photographer for copies of her copyrighted photos, and then use those copyrighted photos without authorization or payment in court filings, those lawyers have committed copyright infringement. See *Images Audio Visual Prods., Inc. v. Perini Bldg. Co.*, 91 F. Supp. 2d 1075, 1082-1083, 1086 (E.D. Mich. 2000) (holding that photographs taken for litigation to document a construction site were for the very purpose of litigation, and those works were "intended to capture such information, specifically for the purpose of litigation" and for judicial proceedings as the intended market, therefore the copyright holder is entitled to exercise control over the use of his works).

66. In another example as to why the fair use doctrine does not apply here, lawyers attempted to subpoena certain photographs, negatives and videotapes created by a photographer in connection with litigation for purposes of inspection and copying without compensating the photographer a fair market, customary value to license the photos. See *Ross v. Miller's Rexall Drugs, Inc.*, No. CIV. A. D-68840, 1990 WL 314290, at *1-*2 (Ga. Super. Oct. 10, 1990).

67. Defendants in *Ross v. Miller's Rexall Drugs, Inc.* refused to pay the photographer's licensing fees, and instead, brazenly attempted an "end-around" by filing a motion to compel a subpoena of the photographs and negatives so that Defendant could use the negatives without paying the full rate, thereby denying the photographer his right to exploit his copyrighted works at a fair market value. The court rejected defendant's attempt to skirt copyright law and quashed the subpoenas. *Id.*

68. Defendant McBride, a licensed attorney, and his respective law firm, have disregarded Plaintiff's demands to cease exploiting Plaintiff's work and continue to pirate the copyrighted Report without authorization, payment or a viable defense.

69. Defendants are jointly and severally liable for copyright infringement for actual damages under the Copyright Act.

70. Defendants have no viable defense here, including but not limited to the fair use doctrine or judicial notice or an absence of damages or "judicial privilege" to copyright infringement of the Report and are liable for actual damages of $30,000 per unauthorized use, or an amount to be determined at trial.

## V. CAUSES OF ACTION

**COUNT 1: COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§ 101 *ET. SEQ.***

**(Against All Defendants)**

71. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

72. Plaintiff Olson owns a valid and subsisting copyright registration in the April 15, 2022 Report she authored. See Ex. A (Report titled "Multi-district comparative study on Community Attitude survey dated April 15, 2022" found on page 39).

73. Plaintiff Olson registered her Report with the US Copyright Office on December 8, 2022, with the U.S. Copyright Office issuing a registration number TX0009206911. See 17 U.S. Code § 412.

74. Having not paid for use of the Report, Defendants and their partners, agents, affiliates, associates, attorneys, and J6 Defendants are liable for the use, copying, publishing of that copy, publicly display of that copy, distribution of that copy, or otherwise commercially exploiting the copyrighted Report.

75. Defendants have directly infringed Olson's copyright in the Report by using, copying, filing in court, publicly displaying, distributing, or otherwise commercially exploiting Olson's Report and without Olson's authorization.

76. Defendants directly benefitted financially from copyright infringement of the Report.

77. Defendants are each secondarily liable for their respective employees, contractors, associates, and agents' infringement when they publicly displayed Olson's Report in Court for their client without paying to secure a license to use Olson's Report.

12

78. Plaintiff Olson has suffered actual harm and has incurred significant costs as a direct and proximate result of Defendants' direct and secondary infringement.

79. Olson is entitled to recover damages based on her actual damages suffered as a result of the Defendants' infringements, pursuant to 17 U.S.C. § 504(b), which amounts will be proven at trial, but no less than $30,000, the amount Plaintiff charged and received from others for identical use of the April 2022 Report.

80. Defendants' conduct has respectively caused, and any continued infringing conduct will continue to cause, irreparable injury to Olson, unless enjoined by this Court.

81. Olson has no adequate remedy at law and pursuant to 17 U.S.C. § 502, Olson is entitled to a permanent injunction prohibiting infringement of Olson's exclusive copyrights in Olson's Copyrighted Reports by Defendants and all persons acting in concert with the Defendants, including their client.

## VI. JURY TRIAL DEMANDED

82. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

## VII. RELIEF REQUESTED

83. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on her behalf adjudging and decreeing that:

A. That an Order be entered against Defendants for violating the provisions of the Copyright Act, 17 U.S.C. §§ 101 et seq. and 501 et seq. by infringing Plaintiff Olson's copyright in her registered April 2022 Report;

B.  That an Order be entered against Defendants in favor of Plaintiff Olson for such actual damages or statutory damages as Plaintiff has sustained as a result of Defendants' infringement of Plaintiff's copyright;

C.  That an Order be entered granting injunctive relief against Defendants pursuant to 17 U.S.C. § 502 preventing and restraining infringement of Plaintiff's copyright by Ordering Defendants, their agents, or anyone working for, in concert with, or on their behalf not to use, publish, publicly display, distribute, or in any way disseminate Plaintiff's copyrighted work;

D.  That an Order be entered compelling Defendants to account for and/or disgorge all gains, profits, and advantages derived by Defendants by their infringement of Plaintiff's copyright or such damages supported by the provisions of the Copyright Act, 17 U.S.C. §§ 101 et seq.;

E.  For punitive damages for Defendants' willful conduct;

F.  For Plaintiff to be awarded pre-and post-judgment interest from the time of the infringement, and any other relief the Court deems necessary and just.

Dated: October 20, 2025

Respectfully submitted,

**JAMES H. BARTOLOMEI, III P.A.**

By: */s/ James H. Bartolomei*
James Bartolomei Esq.
Of Counsel at Duncan Firm, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
501-228-7600 phone
james@duncanfirm.com
SDNY Bar JB7747

*Attorneys for Plaintiff Lindsay Olson*