UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
LINDSAY OLSON,

              Plaintiff,

      - against -

MCBRIDE LAW FIRM, PLLC, and JOSEPH
D. MCBRIDE,

            Defendants.

--------------------------------------X

**MEMORANDUM AND ORDER**

25 Civ. 8684 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court is defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, defendants seek dismissal on four grounds: (i) filing documents through the federal courts' Electronic Case Filing ("ECF") system does not constitute "use" under the Copyright Act; (ii) filing documents through ECF is protected as fair use; (iii) constitutional considerations prevent copyright liability; and (iv) plaintiff's claim is time-barred. Defendants' motion also includes a challenge to plaintiff's recovery of statutory damages and attorneys' fees.

For the reasons set forth below, defendants' motion to dismiss is denied.

## I.    Factual Background[1]

Plaintiff Lindsay Olson is a Texas resident and owner of Lux Research and Analytics, a sole proprietorship.  Compl. ¶ 8.  In April 2022, plaintiff prepared an expert report titled "Multi-District Comparative Community Attitude Study" (the "Report") at the request of two attorneys representing two criminal defendants charged in the "Oath Keepers" trial, which arose from charges against members of the Oath Keepers, an organized militia group that participated in the January 6, 2021 attack on the U.S. Capitol.  Id. ¶ 2.  The Report, prepared for use in support of motions to transfer venue, analyzed potential bias in the District of Columbia jury pool against defendants prosecuted for conduct arising from the January 6, 2021 attack and concluded that "the DC Community is saturated with potential jurors who harbor actual bias" against those defendants.  Id. ¶¶ 2, 4; ECF No. 1-1 at 37. For a fee of $30,000, plaintiff licensed the Report to the two attorneys who commissioned it, authorizing its use in support of venue transfer motions.  Compl. ¶ 20.  In April 2022, the attorneys filed the Report on the public docket in the "Oath Keepers" case in support of a motion to transfer venue.  Id. ¶ 25.

---

[1]    As is required, the Court draws the facts from the Complaint ("Compl.") and the exhibit attached thereto, ECF No. 1.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Defendant Joseph D. McBride and his law firm, McBride Law Firm, PLLC, represented Richard Barnett, a defendant in a separate criminal case also arising from the January 6 Capitol attack.  Id. ¶ 6.  In September 2022, defendants obtained a copy of the Report, without plaintiff's authorization and without paying a licensing fee, and filed it in its entirety in United States v. Barnett, No. 1:21-cr-00038, as an exhibit in support of a motion to transfer venue.  Id. ¶¶ 4, 30.  On December 8, 2022, plaintiff registered the Report with the U.S. Copyright Office.  Id. ¶ 73.  Plaintiff alleges that she first learned of defendants' use within 60 days of filing this action, upon discovering a copy of the Report bearing multiple, partially illegible case number file stamps. Id. ¶ 52.

On October 9, 2025, plaintiff sent defendants a cease-and-desist letter demanding $30,000 for defendants' alleged use of the Report.  Id. ¶ 59.  Defendants responded the same day disputing the claim, and this action followed.  Id. ¶ 60.

## II.  Procedural Background

Plaintiff filed her Complaint on October 20, 2025.  ECF No. 1.  On November 10, 2025, defendants filed a pre-motion letter in support of a proposed motion to dismiss plaintiff's Complaint. ECF No. 14.  Plaintiff opposed defendants' request on November 13,

2025.  ECF No. 15.  On December 11, 2025, the Court held a teleconference with the parties to discuss defendants' proposed motion.  During the teleconference, the Court sought clarification regarding certain allegations underlying the Complaint and posed questions concerning several of the arguments identified in defendants' pre-motion letter, including defendants' anticipated fair use defense.

On January 6, 2026, defendants filed a motion to dismiss plaintiff's Complaint.  ECF No. 18 ("Mot.").  Plaintiff opposed that motion on January 18, 2026.  ECF No. 20 ("Opp.").[2]  Defendants' motion was fully briefed on January 22, 2026.  ECF No. 21 ("Reply").  Plaintiff filed a Notice of Supplemental Authority on March 23, 2026, attaching (i) an order and hearing transcript from Olson v. Law Offices of Aubrey Webb, P.A., et al., No. 25-cv-24904 (S.D. Fla.), in which Chief Judge Cecilia M. Altonaga declined to dismiss a nearly identical complaint against a different attorney who also attached the Report to a venue transfer motion in connection with another January 6 defendant, and (ii) identifying three related proceedings in the United States District Court for

---

[2]  In her opposition, plaintiff sought oral argument on defendants' motion. ECF No. 20.  However, the Court has concluded on the basis of the parties' submissions, which fundamentally involve legal, rather than factual, issues, that oral argument is unnecessary.  See Mir v. Shah, 2012 WL 6097770, at *4 (S.D.N.Y. Dec. 4, 2012); see also Katz v. Morgenthau, 892 F.2d 20, 22 (2d Cir. 1989).

the District of Columbia involving the same plaintiff and substantially similar allegations and legal issues.

### III. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

### DISCUSSION

Defendants seek dismissal of plaintiff's Complaint on four principal grounds. First, defendants argue that their filing of the Report on ECF was not a "use" under the Copyright Act. Second, defendants contend that even if their filing of the Report

-5-

constitutes a "use," such use is protected under the fair use doctrine. Next, defendants argue that constitutional considerations under the First Amendment and the Due Process Clause foreclose liability for copyright infringement when filing documents in criminal proceedings. Finally, defendants contend that plaintiff's claims are barred by the statute of limitations. We address each of defendants' arguments in turn below.

## I. "Use" Under the Copyright Act

As a threshold matter, defendants argue that filing a document through ECF does not implicate any of the exclusive rights enumerated in the Copyright Act. Mot. at 9-12. In sum, defendants contend that filing a document through ECF merely transmits the document to the court for inclusion in the judicial record and does not itself engage in reproduction, distribution, or public display of the work. Id. Defendants characterize any subsequent copying or dissemination as an act of the court's docketing system, not the filer. Id. The Court is unpersuaded.

The Copyright Act grants copyright holders the exclusive rights to, inter alia, "reproduce the copyrighted work in copies," "distribute copies . . . of the copyrighted work to the public," and "display the copyrighted work publicly." 17 U.S.C. § 106(1), (3), (5). Here, plaintiff alleges that defendants obtained a copy

-6-

of the Report, which had previously been filed on the docket in the Oath Keepers prosecution and, in September 2022, filed that copy as an exhibit to a motion in United States v. Barnett, a separate criminal case in which plaintiff had not licensed any use of the Report.  Compl. ¶¶ 25, 29-30.  Plaintiff alleges that this act of downloading and re-uploading the Report generated a new electronic file on the Barnett docket, distinct from the file previously filed in the Oath Keepers case, evidenced by the new ECF case-stamp affixed to the document.  Id. ¶¶ 29-31, 52; Opp. at 6.  Accepting those allegations as true, as the Court must at this stage, defendants took a copy of plaintiff's copyrighted work and caused a new copy of it to be created, filed, and thereby made available to the public through ECF and PACER.

Defendants do not meaningfully dispute that they downloaded and refiled a copy of the Report, instead arguing that the act of filing through ECF is categorically excluded from the Copyright Act's scope because any reproduction is "incidental to the judicial process."  Mot. at 9-12.  Defendants principally rely on cases holding that the transmission of a hyperlink does not itself effect a "distribution" of a copyrighted work because a hyperlink does not contain substantive content.  See Mot. at 11 (citing Pearson Educ., Inc. v. Ishayev, 963 F. Supp. 2d 239, 250-51 (S.D.N.Y.

-7-

2013).  That authority does not support dismissal here.  The court in Pearson drew a sharp distinction between forwarding a hyperlink to content hosted elsewhere and uploading the content itself, stating explicitly that a defendant who "had himself uploaded the electronic copies of the manual" onto a website "would then be liable for copyright infringement."  Id. at 251.  Plaintiff's Complaint alleges precisely that: defendants took a copy of the Report and uploaded it themselves to a different docket, in a different case, generating a new file.  Compl. ¶¶ 29-31, 52.

More fundamentally, defendants identify no authority for the proposition that such conduct falls categorically outside the scope of the Copyright Act merely because it occurred in connection with litigation or because the recipient of the upload is a court's electronic filing system rather than an alternative medium.[3]  Nor do defendants explain why the creation and dissemination of an additional electronic copy of a copyrighted work ceases to constitute reproduction, distribution, or public display simply because the copy is filed on a judicial docket.  On the present record, and in the absence of any authority supporting defendants'

---

[3]    The cases cited by defendants concern whether the particular use of litigation materials qualified as fair use, not whether the underlying conduct constitutes a "use" under the Copyright Act at all.  See, e.g., Healthcare Advocs., Inc. v. Harding, Earley, Follmer & Frailey, 497 F.Supp.2d 627, 637 (E.D. Pa. 2007) (analyzing fair use on a developed summary judgment record); Hollander v. Steinberg, 419 F. App'x 44, 46-47 (2d. Cir. 2011) (same).

proposed novel exemption, the Court declines to hold as a matter of law that filing a copyrighted work on a public docket falls outside the protections afforded by the Copyright Act.

Accordingly, defendants' motion to dismiss on this basis is denied.

## II.  Fair Use

Defendants next argue that even if their filing of the Report implicated plaintiff's rights under the Copyright Act, that use was fair use as a matter of law.  Mot. at 12-20.  Plaintiff responds that fair use is a fact-intensive issue typically reserved for summary judgment and that, in any event, defendants' fair use argument fails on the merits and was previously rejected by Chief Judge James E. Boasberg of the United States District Court for the District of Columbia.  Opp. at 7-18.  The Court agrees that this issue should not be decided at this stage.

Fair use is an affirmative defense, and a defendant asserting it bears the burden of proof.  Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 49 (2d. Cir. 2021).  Courts evaluate four nonexclusive statutory factors relevant to the fair use inquiry: (i) the purpose and character of the use, including whether it is commercial in nature; (ii) the nature of the copyrighted work; (iii) the amount and substantiality of the

portion used in relation to the work as a whole; and (iv) the effect of the use upon the potential market for or value of the copyrighted work.   17 U.S.C. § 107.   Fair use presents a mixed question of law and fact that is "open-ended and context-sensitive," ordinarily requiring an extensive review of evidence not available at the pleading stage.  Cariou v. Prince, 714 F.3d 694, 705 (2d Cir. 2013); TCA Television Corp. v. McCollum, 839 F.3d 168, 178 (2d Cir. 2016).   Accordingly, it is "rarely appropriate for a court to make a determination of fair use at the motion to dismiss stage."  See Graham v. Prince, 265 F. Supp. 3d 366, 377, 379 (S.D.N.Y. 2017) ("[I]t is conceivable – albeit highly unlikely – that a fair use affirmative defense can be addressed on a motion to dismiss[.]") (citing TCA Television Corp., 839 F.3d at 178).

Although fair use can be resolved on a motion to dismiss where the defense is apparent from the face of the complaint, TCA Television Corp., 839 F.3d at 178, defendants have not shown that this case presents the rare circumstance in which the issue can be resolved without discovery.  To the contrary, application of each factor reveals disputed factual questions that cannot be resolved at this stage.

A. Purpose and Character

The first factor considers the purpose and character of the secondary use, including whether the use is transformative; that is, whether it "adds something new" and whether it is commercial in nature. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994). Defendants argue that their use of the Report in the Barnett case was transformative because it served the "judicial function" rather than the Report's "original purpose." Mot. at 14-17. But plaintiff's Complaint alleges the opposite: that the Report was created and licensed to persuade a court that criminal defendants charged in connection with the January 6 attack could not receive a fair trial in the District of Columbia and that venue should therefore be transferred elsewhere, and that defendants used it for precisely that purpose in support of their venue transfer motion in another January 6 prosecution. Compl. ¶¶ 1, 4, 6, 20, 25, 27, 46.

Courts have recognized that using a work "for the precise reason it was created" cuts against a finding that the use was transformative. BWP Media USA, Inc. v. Gossip Cop Media. Inc., 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016); see also Ringgold v. Black Ent. Television, Inc., 126 F.3d 70, 79 (2d Cir. 1997) (finding no transformative use where defendant used the

-11-

copyrighted work "for precisely a central purpose for which it was created"); Hudson Furniture, Inc. v. Mizrahi, 2023 WL 6214908, at *13 (S.D.N.Y. Sep. 25, 2023) (same).  On the present record, where the parties dispute the very characterization of the Report's "original purpose" and whether defendants' use departed from it, the Court cannot resolve the issue of whether that use was transformative at this stage.

The commercial-use inquiry is similarly disputed.  Defendants characterize their filing as non-commercial and assert, without support, that filing the Report through ECF "serves the judicial process rather than generating commercial profit."  Reply at 2-3. However, plaintiff's Complaint alleges that defendants are for-profit attorneys who avoided paying a $30,000 licensing fee by using with Report without authorization, increasing their profits and reducing client costs.  Compl. ¶¶ 31, 34, 47-48.  Regardless of this Court's skepticism of defendants' position that they were not engaging in commercial exploitation, see Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 562 (1985) (commercial use exists where "the user stands to profit from exploitation of the copyrighted material without paying the customary price"), this is a question not amenable to resolution in this case on a motion to dismiss.

The Court further notes that the very argument defendants advance here was addressed and rejected by Chief Judge Cecilia M. Altonaga of the United States District Court for the Southern District of Florida in a nearly identical case brought by this plaintiff.  See Olson v. Law Offices of Aubrey Webb, P.A., et al., No. 25-cv-24904 (S.D. Fla.).  There, Chief Judge Altonaga declined to dismiss a substantially similar complaint alleging unauthorized use of the Report, expressing skepticism during oral argument towards defendants' commercial-use argument and observing that the defendants "used the report for the very purpose that she created it" and "made money" from their "work as a member of the bar." ECF No. 22-2, 28:7-29:18.  While not binding here, this Court finds Chief Judge Altonaga's reasoning persuasive and follows suit in her decision to decline defendants' motion to dismiss.

B. Nature of the Copyrighted Work

The second factor considers the nature of the copyrighted work, with factual works generally receiving less protection than highly creative ones.  Campbell, 510 U.S. at 586.  Defendants merely assert that this factor is "less significant" in the context of judicial proceedings and do not seriously engage with its application to the facts presented here.  Mot. at 18.  Plaintiff alleges that the Report reflects considerable creative effort in

the "selection, coordination, and arrangement" of polling data into an original narrative, rather than a compilation of raw facts. Compl. ¶¶ 21-24, 43-44.  The degree of creativity reflected in the Report, as opposed to purely factual or informational content, is a question of fact not resolvable on the pleadings here.

C. Amount and Substantiality

The third fair use factor considers the "amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  Defendants do not dispute that they filed the Report in its entirety and instead argue that such filing was reasonable because litigants routinely submit complete documents to ensure the court has "full context."  Mot. at 18-19.  Plaintiff responds that defendants' appropriation of the entire Report for the very same purpose for which it was created is unreasonable and contends that defendants could have instead merely referenced the Report's existence or summarized its conclusions.  Compl. ¶¶ 32-33, 62; Opp. at 16.

Where, as here, "the purpose of defendant's use is precisely the same as that of third parties who license the material from the plaintiff," courts have found that the question of whether the amount used was reasonable in relation to the purpose of the copying "must necessarily be answered in the negative."  Sinclair

-14-

v. Am. Media, Inc., 2018 WL 5258583, at *6 (S.D.N.Y. Sep. 7, 2018) (citing BWP Media, 196 F. Supp. 3d at 409).  Defendants here have not established on the pleadings that the wholesale reproduction of the Report was necessary as a matter of law, particularly where plaintiff alleges that defendants could have summarized or otherwise referred the court to the Report without reproducing it in full.

D. Market Effects

The fourth fair use factor examines the effect of the challenged use on the potential market for or value of the copyrighted work.  Campbell, 510 U.S. at 590.  Plaintiff alleges that she maintained a target market for the Report among a finite pool of attorneys representing January 6 defendants who sought venue transfers, that the Report commanded a $30,000 licensing fee in a prior transaction, and that defendants' unauthorized use deprived her of at least one such license while reflecting precisely the use for which she markets the Report.  Compl. ¶¶ 35-42.  Defendants respond that the Report's earlier appearance on PACER eliminated any further licensing market, such that no cognizable harm can result from subsequent unauthorized copying. Mot. at 19-20.

The Court rejects defendants' premise that a work's appearance in one court file extinguishes the copyright owner's market for licensing it elsewhere.  If filing a copyrighted work on ECF in connection with a legal proceeding strips it of copyright protection for all future uses, the same would be true of a photograph, film script, book, article, or any other copyrighted work introduced as an exhibit in litigation.  Nothing in the Copyright Act supports such a rule, and the Court declines to adopt one here.

Beyond the harm that defendants may have caused, whether and to what extent defendants' conduct, if replicated by similarly situated litigants, would harm plaintiff's licensing market for the Report is a factual question dependent on evidence not currently before the Court, including the scope and durability of that market and the extent to which defendants' use displaced a sale plaintiff otherwise would have made.  In sum, defendants have not shown that fair use is clearly established on the face of the Complaint.  The Court denies defendants' motion to dismiss on the basis of the fair use doctrine.

## III. Constitutional Considerations

Defendants further argue that imposing copyright liability here would impermissibly burden criminal defendants'

-16-

constitutional rights, interfere with the effective assistance of counsel, and undermine the public's right of access to judicial proceedings and records. Mot. at 20-25. The Court is unpersuaded.

While the public and press enjoy a qualified general right, grounded in both common law and the First Amendment, to access judicial records, "the right to inspect and copy judicial records is not absolute." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597-98 (1978). That right ensures that the public may review, scrutinize, and report on the materials underlying judicial decision-making to promote accountability in the administration of justice. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006) (citing United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995)).

Defendants identify no authority holding that the right of inspection confers an independent right to reproduce and commercially exploit copyrighted material found within a court file, much less to immunize such reproduction from liability under copyright law. The cases upon which defendants rely establish only that documents satisfying the definition of "judicial document" are subject to public inspection and, absent sealing, may be reviewed by anyone with access to PACER. United States v. Amodeo, 44 F. 3d 141, 145 (2d Cir. 1995). That principle is not

-17-

disputed.   Plaintiff does not seek to prevent the public from viewing the Report as filed or to interfere with a court's ability to consider it.   Indeed, plaintiff readily acknowledges that defendants could have "pointed to the docket entry, cited a few lines from [the] Report[,] or summarized it for the Court in their own words."  Opp. at 16.

In contrast to those permissible uses, plaintiff instead seeks redress for defendants' alleged wholesale reproduction and filing of an additional copy of the Report in a separate proceeding, without authorization and without a license, "for their own profit and cost savings for their client."  Opp. at 19. The public's right to inspect and access judicial records is not equivalent to a right, vested in any litigant, to wholesale reproduce and redistribute copyrighted material found on a public docket for use in unrelated litigation.   Defendants cite to no authority suggesting that the former categorically immunizes the latter from the protections afforded by the Copyright Act.

Further, defendants' argument was recently considered and rejected by Judge Beryl A. Howell of the United States District Court for the District of Columbia in litigation involving the same  plaintiff,   the  same  Report,  and  materially  similar allegations  of  unauthorized  use  by  different  attorneys

-18-

representing January 6 criminal defendants.  While Judge Howell's decision is not binding on this Court, its reasoning is persuasive. Specifically, Judge Howell explained that, "merely making copyrighted material accessible in public records does not, by itself, destroy the copyright owner's property interest in that material," and that "[t]o hold otherwise would strip copyright protection from every photograph, book, film, song, or other creative work ever filed on the public docket in litigation." Olson v. L. Offs. of Kira Anne W., 2026 WL 1459791, at *10 (D.D.C. May 25, 2026).  This Court agrees and likewise declines to dismiss plaintiff's claims on right-of-access grounds.

Defendants due process argument is similarly unavailing. Defendants point to no authority, and the Court is aware of none, supporting the proposition that a criminal defendant's right to mount a defense entitles his counsel to appropriate a third party's copyrighted work product without payment.  According to the Complaint, the Report was not evidence of Barnett's guilt or innocence, but rather a commercially-licensed advocacy tool that defendants could have obtained through the same channel, a paid license, used by the attorneys who commissioned it.  Compl. ¶¶ 20-28; Opp. at 18-20.  Defendants cite no authority recognizing a "litigation necessity" exception to the Copyright Act, and the

Court declines to recognize one here.  Accordingly, defendants' constitutional arguments do not warrant dismissal of plaintiff's claims.

## IV.  Statute of Limitations

Defendants argue that plaintiff's claim is barred by the Copyright Act's three-year statute of limitations, 17 U.S.C. § 507(b), because the alleged infringement occurred in September 2022, and plaintiff did not file suit until October 2025.  Mot. at 25-28.  The Court disagrees.  This Circuit applies the "discovery rule" to copyright infringement claims, under which a copyright claim accrues when the "copyright holder discovers, or with due diligence should have discovered, the infringement."  Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124 (2d Cir. 2014).  Courts may dismiss copyright infringement claims on statute of limitations grounds at the pleadings stage where it is clear from the face of the complaint that plaintiff's claims are barred; however, dismissal is not appropriate where there is even "some doubt."  PK Music Performance, Inc. v. Timberlake, 2018 WL 4759737, at *7 (S.D.N.Y. Sep. 30, 2018) (citations omitted).

Defendants contend that plaintiff should have discovered their alleged infringement earlier because she knew the Report had been filed in the Oath Keepers case in April 2022 and because the

-20-

universe of January 6-related venue motions was sufficiently limited. Mot. at 27-28. The Complaint, on the other hand, alleges that plaintiff did not learn of defendants' use until within 60 days of filing this action, when she discovered a copy of the Report bearing multiple case-number stamps suggestive of unauthorized re-filing. Compl. ¶ 52. She further alleges that this discovery required a burdensome investigation against hundreds of January 6-related cases, particularly because PACER lacks full-text search functionality and because the docket entries did not identify plaintiff or her business by name. Id. ¶¶ 53-55. Whether the public availability of the Report and the existence of a finite market of litigants was sufficient to place plaintiff on inquiry notice of defendants' use, or whether the absence of any identifying reference to plaintiff or her work on hundreds of dockets made discovery through reasonable diligence impracticable, are questions of fact that cannot be conclusively established from the pleadings alone. Accordingly, defendants' motion to dismiss on this basis is denied.[4]

---

[4]    Judge Howell also recently declined to dismiss substantially similar claims brought by the same plaintiff on statute-of-limitations grounds, concluding that the question of when plaintiff discovered or should have discovered the alleged infringement could not be resolved on the pleadings. Olson, 2026 WL 1459791, at *8 (D.D.C. May 25, 2026). That conclusion, while not binding, is consistent with the fact-intensive nature of the inquiry here.

## V.    Damages

Finally, defendants argue that plaintiff cannot recover statutory damages and attorneys' fees under 17 U.S.C. § 412 because her copyright registration post-dates the alleged infringement, and that the Complaint fails to allege actual damages.  Neither argument warrants dismissal.  Mot. at 28-31.  The Copyright Act limits the availability of statutory damages and attorneys' fees where (i) the infringement occurred before registration of the copyrighted work, or (ii) the infringement occurred within three months of the first publication and registration is made within those first three months.  17 U.S.C. § 412.  Here, plaintiff registered the Report on December 8, 2022, after the alleged September 2022 infringement.  Compl. ¶ 73.  Section 412 therefore forecloses recovery of statutory damages.  However, that limitation has no bearing on a copyright owner's entitlement to actual damages and disgorgement of an infringer's profits.  17 U.S.C. § 504(b).  Plaintiff seeks recovery of actual damages, i.e., the licensing fee she alleges defendants avoided paying, rather than statutory damages.  Compl. ¶¶ 70, 79.  The unavailability of one category of damages does not defeat an otherwise viable copyright claim.

The Court is similarly not persuaded that plaintiff has failed to plausibly allege actual damages.  The Copyright Act provides that a copyright owner may recover "actual damages suffered . . . as a result of the infringement, and any profits of the infringer that are attributable to the infringement[.]"  17 U.S.C. § 504(b). The "primary measure" of actual damages is the extent to which the fair market value of the work has been diminished by the infringement, which a plaintiff may establish by reference to the fair market value of a license covering an infringing use of the plaintiff's copyrighted works.  Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1118 (2d Cir. 1986); On Davis v. The Gap, Inc., 246 F.3d 152, 166 (2d Cir. 2001).  Plaintiff alleges that she licensed the Report to other attorneys for $30,000 for the same category of use.  Compl. ¶¶ 20, 28, 36, 40, 79.  She further alleges that defendants were enriched by avoiding any cost, and she seeks disgorgement of any resulting profit.  Id. ¶¶ 21, 34, 47-48, 76, 79.

Whether the $30,000 figure from plaintiff's prior license accurately reflects the fair market value of defendants' use of the Report is an issue not appropriate for resolution at this time. However, plaintiff's allegations are more than sufficient to plausibly allege actual damages.

## VI.  Sanctions

In her opposition, plaintiff requests sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, arguing that defendants filed the instant motion in bad faith because it disregarded guidance the Court offered at the December 11, 2025 pre-motion conference indicating that a fair use defense was unlikely to succeed.  Opp. at 24-25.  The Court declines to impose sanctions.

To impose sanctions under either Section 1927 or the court's inherent power, a court must find that the challenged position lacked a colorable basis and that it was brought in bad faith or for an improper purpose such as harassment or delay.  Schlaifer Nance & Co. v. Est. of Warhol, 194 F.3d 323, 336 (2d Cir. 1999).  A finding of bad faith and a finding that the conduct is without color or for an improper purpose "must be supported by a high degree of specificity in the factual findings."  Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009).  Plaintiff has not made the requisite showing here.  Although the Court ultimately rejects defendants' arguments for the reasons set forth above, the motion cannot be characterized as lacking any colorable basis.  That the Court rejects the substantial, if

ultimately unpersuasive, legal arguments does not render them frivolous or improper.

Nor does the Court agree that defendants acted in bad faith by filing a motion after the Court expressed reservations concerning defendants' arguments during the parties' pre-motion conference.  Although the statements made by the Court were made after careful review of the pleadings and relevant case law, those statements did not constitute a binding ruling.  Defendants' decision to proceed with the motion despite such statements is not evidence of bad faith.  Further, as the Second Circuit has made clear, a district court has no authority to prohibit a party from making a motion it is otherwise entitled to make under the Federal Rules.  Richardson Greenshields, Inc. v. Lau, 825 F.2d 647, 652 (2d Cir. 1987).  Accordingly, plaintiff's request for sanctions is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion is denied. Although the Court has addressed the parties' positions in the context of defendants' affirmative defenses and the standards governing a motion to dismiss, the foregoing discussion may nevertheless provide the parties with meaningful guidance regarding the likely merits of their respective positions.  The

-25-

Court urges the parties to avoid the expenditure of additional resources on attorneys' fees and instead devote those resources toward resolving this case.  The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 16 and 17.

Dated:   July 20, 2026
         New York, New York

_____
    NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE